IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:23-cv-00607-DDD-SKC

ENLITIC, INC.,

    Plaintiff,

v.

JAMES MICHAEL CONYERS,

    Defendant.

## TEMPORARY RESTRAINING ORDER

Plaintiff Enlitic, Inc. alleges that its former CEO, Defendant James Michael Conyers, misappropriated Enlitic's trade secrets and intends to use its confidential and proprietary information to compete directly with Enlitic. On March 8, 2023, Enlitic filed this case and moved ex parte for a temporary restraining order. *Doc.* 2. Enlitic's motion also seeks expedited discovery and an order requiring Mr. Conyers to show cause why a preliminary injunction should not be issued. The Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the request for a temporary restraining order is granted.

## STANDARD OF REVIEW

A party seeking a temporary restraining order or preliminary injunction, both forms of extraordinary relief, must show: (1) a substantial likelihood that the movant eventually will prevail on the merits; (2) that the movant will suffer imminent and irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs

- 1 -

whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (irreparable injury must be imminent).

A court may issue a temporary restraining order without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1); *see also In re Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979) (representing one of a narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action); *Statera, Inc. v. Henrickson*, No. 09-cv-01684-J, 2009 WL 2169235, at *1 to *4 (D. Colo. July 17, 2009) (same).

## BACKGROUND[1]

Enlitic is a healthcare information-technology company that develops artificial intelligence for a platform aimed at making patient and treatment data available and interchangeable across critical-care systems worldwide. Enlitic's foundational program is "Enlitic|Curie," an AI database and evidence platform that allows implementation of

---

[1] The following is taken from the sworn declarations of Ryan Lennartson, *Doc. 4*, Trent Walton, *Doc. 5*, Michael Sistenich, *Doc. 6*, Ava Bonney, *Doc. 7*, and Thea Moeller, *Doc. 8*.

Enlitic application modules or third-party AI algorithms. Enlitic's value and revenue, alleged to be worth at least hundreds of millions of dollars, is primarily generated from its proprietary source code and the Curie products that build upon that source code.

Enlitic takes great pains to keep its source code and AI projects confidential in order to retain the value of its products. These measures include: (1) requiring employees with access to proprietary information to sign a Confidential Information and Invention Assignment Agreement that provides employees will not disclose Enlitic's confidential information to third parties, will not use such information outside of the scope of their employment, and will return all such information in their possession to Enlitic when employment ends; (2) restricting access to confidential and proprietary information through password protection, restricted network access, and unique log-in credentials; (3) maintaining data-security classifications that differentiate files based on sensitivity of the data contained; (4) requiring employees to sign an Employee Handbook that mandates employees may not connect personal devices to Enlitic's networks without approval and may not store, access, or transfer Enlitic data on non-authorized equipment.

Mr. Conyers joined Enlitic in May of 2021. He began as Enlitic's Chief Operating Officer and was promoted to Chief Executive Officer in November 2021. Upon joining, he was assigned a work laptop with a unique asset tag and a unique network user account, and he executed the Confidentiality Agreement and Employee Handbook. Given his prominent position in the company, Mr. Conyers had the highest level of security clearance and access to Enlitic's confidential and proprietary data.

In early October 2022, Mr. Conyers first expressed to Thea Moeller, his executive assistant, that he planned to leave Enlitic. Following the failure of Enlitic's Series C fundraising round, Mr. Conyers noted to her that they could both be fired. Mr. Conyers informed his assistant that if he parted ways with Enlitic, he would start his own competing business using Enlitic's proprietary billing and coding technology. Contemporaneously, he had Ms. Moeller purchase a MacBook Pro with specifications he explained would help build his new company, which he planned to name "Reactic."

At the beginning of 2023, Ms. Moeller observed Mr. Conyers engage in multiple instances of suspicious activity: (1) Mr. Conyers plugged an external hard drive into Ms. Moeller's computer without explanation; (2) Mr. Conyers deleted a large number of files from his OneDrive document account and denied doing so; (3) Mr. Conyers asked Ms. Moeller to book flights to Poland for a business trip to meet with contractors, but no meetings had been booked, and when Ms. Moeller contacted one of the contractors, they were unaware of the supposed meeting.

On February 23, 2023, Mr. Conyers asked the IT department to "wipe" his company laptop without creating a backup. The department noted this was strange and did not do so. The next day, Enlitic terminated the defendant's employment. Upon termination, Mr. Conyers contacted Ms. Moeller and requested she locate and return a surreptitiously placed external hard drive and a physical notebook that included a to-do list of tasks that one would associate with the first stages of founding a business, including "biz name" and "LLC EIN." Ms. Moeller reported this to Enlitic.

Enlitic hired a forensic investigator, Trent Walton, to examine Mr. Conyers's equipment and accounts. Mr. Walton found that

"reacticai.com" was registered on October 22, 2022, and Mr. Conyers had signed into the email address "jim@reacticai.com" from his work computer. Mr. Walton found that Mr. Conyers visited "reacticai.com" on January 9, 2023, which he believes may be the date the website went live.

On February 27, 2023, the IT Network and Security Administrator at Enlitic restored more than 2,100 items that Mr. Conyers had attempted to delete. The files included the source code for Curie and other proprietary AI tools including "Curie|ENCOG" and "Curie|ENDEX" that Mr. Conyers had uploaded to cloud-based storage accounts and then rapidly deleted. On March 3, Enlitic demanded that Mr. Conyers return Enlitic's proprietary information and submit his personal devices and accounts for inspection to demonstrate he no longer retained possession. Mr. Conyers has not done so.

## DISCUSSION

Enlitic fears that Mr. Conyers intends to use its confidential intellectual property to compete with Enlitic, and that he has or plans to disclose its integral proprietary information to third parties. Plaintiff moves ex parte for a temporary restraining order that, generally, prohibits Mr. Conyers from using or sharing Enlitic's proprietary information, encouraging parties related to Enlitic to terminate their relationship with Enlitic, and altering or destroying any evidence related to this case. Enlitic also seeks expedited discovery, the return of its property, and a preliminary injunction after Mr. Conyers has been given an opportunity to be heard. Based on Mr. Conyers's course of conduct as alleged by Enlitic, I find the requested relief appropriate.

The supplied affidavits establish a likelihood of success on the merits. The plaintiff has asserted two claims: breach of contract and

violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1832. The facts above satisfy the prima facie elements of these causes of action. Mr. Conyers has misused and failed to return confidential, proprietary information in violation of his signed Confidentiality Agreement. He has acquired confidential information that derives its value through its secrecy via means he ought to have known were improper, including hiding an external hard drive and attempting to delete evidence that he was uploading source code onto shared cloud-based accounts, in apparent violation of the Trade Secrets Act.

Mr. Conyers's actions threaten imminent and irreparable injury to Enlitic. Enlitic's value is primarily derived from its proprietary source code. Mr. Conyers explained to his assistant that he planned to use the source code in his competing business. He refuses to return Enlitic's property. He has taken concrete steps toward setting up Reactic AI and misusing Enlitic's confidential information for personal gain, making injury imminent, if not already ongoing. The injury is also irreparable, as it will be difficult or impossible to measure Enlitic's damages due to the misuse of its source code by a competing enterprise, or due to other disclosures that could occur.

The balance of harms also favors granting a temporary restraining order. Enlitic's entire business depends on the source code that Mr. Conyers has misappropriated. If a temporary restraining order is not granted, the plaintiff will be subject to the injury described above. If a temporary restraining order is granted, Mr. Conyers will lose his ability to use trade secrets he has misappropriated. He will suffer no legally recognized harm if he is prevented from unlawful use of such information.

I find that there is no indication that granting a temporary restraining order would be adverse to the public interest. Protecting trade secrets and preventing theft seems to weigh in favor of the public interest.

I further find that the conditions of Rule 65(b)(1) are met. Issuance of temporary restraining order without notice to the adverse party is highly disfavored. But as discussed above, Enlitic has provided specific facts in its verified complaint and affidavits of its employees that clearly show immediate and irreparable damage will occur before Mr. Conyers can be heard in opposition. And Enlitic has adequately explained its efforts to notify Mr. Conyers, including sending copies of the relevant filings to Mr. Conyers's email account. *Doc.* 2 at 2-3.

Rule 65(c) states that a court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." A court has wide discretion in determining whether to require security. *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003); *Brumfiel v. U.S. Bank*, No. 12-cv-02716-WJM, 2013 WL 1874186, at *7 (D. Colo. May 6, 2013) ("[T]he case law supports broad judicial discretion . . . in determining whether a bond need be posted at all." (collecting cases)). Enlitic argues that it should not be required to post a bond, and I agree.

## Conclusion

It is ORDERED that the plaintiff's motion, *Doc. 2*, is GRANTED IN PART as to the request for a temporary restraining order, and TAKEN UNDER ADVISEMENT IN PART as to the request for a preliminary injunction;

It is FURTHER ORDERED that:

Effective immediately, Defendant James Michael Conyers, together with his officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, is TEMPORARILY RESTRAINED from:

1. Accessing, using, disclosing, sharing, or making available to any person or entity other than Plaintiff Enlitic, Inc., any of Enlitic's confidential, proprietary, or trade-secret documents, data, or information;

2. Sending, transmitting, or otherwise transferring Enlitic's confidential, proprietary, or trade-secret information to any other person or entity;

3. Altering, destroying, or disposing of any evidence including documents, communications, information, or other tangible or intangible things, in any form, relating to (i) Enlitic, (ii) the claims asserted by Enlitic in this action, (iii) Mr. Conyers's acquisition, use, transfer, or disposal of Enlitic's property, or (iv) Mr. Conyers's preparation to compete with, or competition with, Enlitic, that is stored in any form, including electronic data, files, applications, and source code, electronic communications such as emails, chats, and texts, devices, electronic media, cloud storage, documents, notebooks, and/or other materials; and

4. Directly or through others, soliciting, inducing, encouraging, or participating in soliciting, inducing, or encouraging any person known to Mr. Conyers to be an employee, consultant, or independent contractor of Enlitic to terminate his or her relationship with Enlitic.

Pursuant to Federal Rule of Civil Procedure 65(b)(2), this Temporary Restraining Order will expire fourteen days after entry, unless the Court extends it for good cause before that time or the Court grants a motion to dissolve or modify it pursuant to Federal Rule of Civil Procedure 65(b)(4);

Should a preliminary injunction issue, Mr. Conyers may be required to account for and return to Enlitic any and all of Enlitic's property, including its confidential, proprietary, and trade secret-information, wherever it resides or is stored; and

Pursuant to Federal Rule of Civil Procedure 65(c), I find in my discretion that the plaintiff is not required to give security.

It is FURTHER ORDERED that:

As soon as possible, but no later than March 13, 2023, the plaintiff must serve the defendant with (1) a summons; (2) the Complaint, *Doc. 1*, and all attachments thereto; (3) the motion for temporary restraining order and preliminary injunction, *Doc. 2*, the brief in support, *Doc. 3*, the declarations in support, *Docs. 4, 5, 6, 7, 8*, and all attachments thereto; and (4) this Order, in accordance with the requirements of Federal Rule of Civil Procedure 4. The plaintiff must promptly file proof of service in accordance with Federal Rule of Civil Procedure 4(l)(1);

A preliminary-injunction hearing is SET for March 23, 2023 at 9:30 a.m., at which the defendant must SHOW CAUSE why the Court should not enter a preliminary injunction extending the temporary relief granted in this Order pending a final adjudication on the merits;

The defendant must respond to the motion for preliminary injunction, *Doc. 2*, by 5:00 p.m. on March 20, 2023. The plaintiff may file a reply in support of the motion no later than 10:30 a.m. on March 22, 2023;

Pursuant to Federal Rule of Civil Procedure 43(c), all direct witness testimony must be submitted by affidavit in advance of the hearing, and live testimony at the hearing will be limited to cross-examination and redirect examination. Both sides' witness affidavits, to the extent not

already in the record, must be filed electronically no later than 1:30 p.m. on March 22, 2023;

No later than 1:30 p.m. on March 22, 2023, the parties must exchange with each other and file with the Court exhibit and witness lists, and submit copies of all exhibits by email to Domenico_Chambers@cod.uscourts.gov as attachments or via secure download link. Except for any video or audio exhibits, the exhibits must be in PDF file format. The file name for each exhibit must include the exhibit number and description (*e.g.*, "Exhibit 1 – Smith Affidavit"). Consult DDD Civ. P.S. II(C) regarding numbering of exhibits. The parties' witness lists must include an estimate of the time required for their cross-examination of each of the opposing party's witnesses. Exhibit and witness list forms can be found at [http://www.cod.uscourts.gov/JudicialOfficers/ActiveArticleIIIJudges/HonDanielDDomenico.aspx](http://www.cod.uscourts.gov/JudicialOfficers/ActiveArticleIIIJudges/HonDanielDDomenico.aspx);

At the hearing, each side will be allotted time for an opening statement, cross-examination and redirect examination of witnesses, and closing argument. The parties are advised that the Court may set time limits for each side. Counsel should be prepared to answer questions from the Court during closing arguments;

The plaintiff may file a motion for expedited discovery no later than March 17, 2023. Any such motion must include a proposed timeline for the requested deposition of the defendant and forensic examination of the defendant's devices. The defendant must file a response no later than 10:30 a.m. on March 22, 2023. No replies will be permitted without leave of Court;

Any other motions affecting the hearing must be filed by 1:30 p.m. on March 21, 2023, with responses due by 1:30 p.m. on March 22, 2023. No replies will be permitted without leave of Court.

DATED: March 10, 2023     BY THE COURT:
        at 2:44 p.m.

                                       ~~Daniel D.~~ Domenico
                                       United States District Judge